UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                    :
CARLOS DAVIS,                                       :
                              Plaintiff,            :
                                                    :   **MEMORANDUM DECISION AND**
                                                    :   **ORDER**
             – against –                            :   16 Civ. 3685 (AMD) (LB)
                                                    :
CITY OF NEW YORK, JEFFREY GINSBURG,                 :
LONNIE W. OWENS, ROBERT WILLIAMS,                   :          **FILED**
JOHN/JANE DOE (1-20)                                :      IN CLERK'S OFFICE
                              Defendants.           :   US DISTRICT COURT E.D.N.Y.
------------------------------------------------------------- X
                                                        ★   **MAY 2 5 2017**   ★
**ANN M. DONNELLY**, District Judge.
                                                          **BROOKLYN OFFICE**

## INTRODUCTION

The plaintiff, Carlos Davis, seeks to recover damages for the denial of his constitutional

rights and resulting wrongful conviction. On July 1, 2016, he filed this complaint asserting

causes of action pursuant to 42 U.S.C. § 1983 and New York State law against the following

defendants: the City of New York ("the City"), Jeffrey Ginsburg, an Assistant District Attorney

(ADA) with the Brooklyn District Attorney's Office ("DA's Office") during the relevant time

period; Lonnie Owens, an officer and sergeant with the New York City Police Department

("NYPD") during the relevant time period; Robert Williams, who allegedly acted as an agent of

the DA's Office; John/Jane Does 1 through 10 ("NYPD John Does"), detectives in the Brooklyn

North Homicide Squad, 75th Precinct, or other divisions of the NYPD during the relevant time

period; and John/Jane Does 11 through 20 ("DA John Does") who were employed by the DA's

Office. For the reasons that follow, I grant the defendants' motion to dismiss the fair trial claims against defendants Sergeant Owens and ADA Ginsburg. Additionally, I grant their motion to dismiss the claim for intentional infliction of emotional distress. The motion is denied in all other respects.

## BACKGROUND[1]

This case arises out of the plaintiff's exoneration, following the Brooklyn DA's Office's investigation of cases involving a former NYPD detective, Louis Scarcella.[2] (Compl., ECF 1 ¶ 3.)

In September of 1988, Norris Williams was shot and killed in East New York, Brooklyn. (Compl., ECF 1 ¶¶ 24-30.)  The plaintiff, who was 18 at the time, claims that he witnessed the shooting, but did not fire a weapon. According to him, he was sitting on a stoop with a few acquaintances when they were approached by an armed group of men, including Williams, Mark Cross, Cameron Chapman, and Kirk Robinson. (*Id.* ¶¶ 22-27.) The men began shooting, and the plaintiff fled. (*Id.* ¶¶ 26-27.)

Afterward, Cross and Chapman went to the home of Norris Williams' mother, Janet Williams, who was married to defendant Sergeant Owens. (*Id.* ¶¶ 33, 39-40, 56.)  Sergeant Owens and Detective Scarcella went to the scene of the shooting. (*Id.* ¶ 33.)  Someone had placed a jacket belonging to someone from Williams' group under Williams' head.  (*Id.* ¶ 35.) .38 caliber bullets were recovered from the scene and from Williams' body. (*Id.* ¶¶ 35-38.)

---

[1] For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).
[2] Although the plaintiff alleges that Detective Scarcella was involved in the investigation, he does not name Scarcella as a defendant in this action or claim that Scarcella had any role in depriving him of his civil rights.

2

Sergeant Owens and Detective Scarcella went to Janet Williams' apartment. Cross and Chapman told Detective Scarcella that the plaintiff shot and killed Norris Williams. (*Id.* ¶¶ 39-41.) Detective Scarcella arrested the plaintiff, who was indicted for murder in the second degree and criminal possession of a weapon in the second and third degrees. (*Id.* ¶ 48.) On August 15, 1989, ADA Kenneth Rigby obtained material witness warrants for Mark Cross and Kirk Robinson, who were incarcerated for unrelated crimes, and had refused to testify at the plaintiff's trial. (*Id.* ¶ 50.)

According to the plaintiff, when Cross and Robinson were produced pursuant to the material witness orders they recanted their prior statements implicating the plaintiff as the shooter—even after ADA Ginsburg "threatened" them "with prosecution for contempt and/or perjury if they did not 'stick to their story.'" (*Id.* ¶¶ 58-60.)[3] The prosecutor nevertheless called Robinson as a witness at the trial. Robinson testified that he knew nothing about the shooting. ADA Ginsburg asked for a recess so that the victim's mother, Janet Williams, could speak with him; when Robinson returned to the stand, he claimed that ADA Ginsburg "threatened him and made improper promises to him." (*Id.* ¶¶ 64-72.) Cross also testified that he did not see the plaintiff do anything, and that he did not know anything about the events the night of the shooting. (*Id.* ¶¶ 75-76.)

Left without any witnesses, ADA Ginsburg asked for a one day recess so he could "us[e] the 75th precinct detectives" to locate another witness; he agreed that if he did not find any

---

[3] The plaintiff also claims that ADA Ginsburg "directed" defendants Sergeant Owens and Robert Williams to find Chapman, who had disappeared. (Compl. ¶ 62.) Ginsburg allegedly told them to "pressure [Chapman] to testify for the prosecution, by any means necessary, including the threat of prosecution for perjury, contempt, and/or the murder of Mr. Williams." (*Id.*)

3

witnesses, he would drop the charges. (*Id.* ¶ 80.) ADA Ginsburg contacted Sergeant Owens, a 75th precinct officer who, as noted above, was also the victim's stepfather, and Robert Williams, the victim's brother; he "directed them to locate a witness to testify against [the plaintiff]." (*Id.* ¶¶ 56, 82.) The plaintiff alleges that Williams reached out to a woman named Kristie Hayes, and that defendants Ginsburg, Owens, Williams, and at least one of the Doe defendants met with her, threatened her, and "fed her a false narrative and coached her on how to testify against Mr. Davis." (*Id.* ¶ 85; *see also id.* ¶¶ 82-88.)

Hayes was called as a witness. She identified herself as "Christina Smith," and testified that she saw the plaintiff fire a gun on the night of the shooting. (*Id.* ¶¶ 90-93.) The plaintiff claims that "[t]he prosecution knew Ms. Hayes' testimony was false in all material respects and that her statements the night before contradicted her testimony." (*Id.* ¶ 92.) Moreover, the plaintiff claims that the prosecutor failed to turn over other *Brady* material,[4] including an autopsy receipt indicating that Williams was shot by a .38 caliber weapon, which matched the ammunition found in a jacket underneath Williams' head at the scene, and that Hayes was "in jeopardy for uncharged criminal conduct at the time she testified." (*Id.* ¶ 103.)

The jury acquitted the plaintiff of murder, concluding that the prosecutor did not disprove the defense of justification, and convicted him of criminal possession of a weapon in the second degree. (*Id.* ¶ 105.) The plaintiff was sentenced on March 5, 1991 to 7 and ½ to 15 years in prison, plus five years of post-release supervision. (*Id.* ¶ 106.) He was released on

---

[4] "*Brady*" material is information that must be disclosed to the defense under the Fifth and Fourteenth Amendments, pursuant to the Supreme Court case *Brady vs. Maryland*, 373 U.S. 83 (1963).

March 13, 1997, and remained on parole and/or post-release supervision for "a number of years." (*Id.* ¶ 107.)

In 2013, the Conviction Review Unit of the DA's Office ("CRU") initiated an independent reinvestigation of the plaintiff's case, as part of a broader review of cases involving former Detective Scarcella. (*Id.* ¶ 3.) As a result of that investigation, the DA's office concluded that Kristie Hayes lied when she testified at the plaintiff's trial. (*Id.* ¶¶ 7-9.) The CRU contacted the plaintiff, and on April 2, 2015, the DA's Office and moved to vacate the conviction and to dismiss the indictment. (*Id.* ¶¶ 116-17.) The motions were granted and the conviction was vacated.

The plaintiff asserts that the individual defendants violated his Fourth, Fifth, Sixth and Fourteenth Amendment rights to due process and a fair trial. He claims that defendants Sergeant Owens, Robert Williams, and John/Jane Does 1-20 manufactured false evidence against him and that they suppressed *Brady* evidence. (*Id.* ¶¶ 119-28.) Additionally he asserts that ADA Ginsburg, "acting in an investigative capacity, knowingly and intentionally manufactured or caused the manufacturing of…Ms. Hayes' false testimony," and that these actions "caused the continuation of criminal proceedings against [the plaintiff] for which [Ginsburg] knew there was no probable cause." (*Id.* ¶¶ 129-35.) He also alleges state law claims for malicious prosecution, intentional infliction of emotional distress, and negligent training, supervision, and discipline. (*Id.* ¶¶ 177-90.)

Finally, the plaintiff asserts a claim of municipal liability against the City based on the DA's Office's alleged pattern and practice of violating constitutional rights under the direction of former District Attorney Charles J. Hynes. (*Id.* ¶¶ 136-76.) He claims that from 1990 through

5

2010, the DA's Office maintained a policy of "(a) manufacturing false evidence and testimony through improper coercion of witnesses; (b) knowingly presenting false testimony and arguments at criminal proceedings; (c) suppressing *Brady* information; and (d) covering up these unlawful practices." (*Id.* ¶ 138-39.) According to the plaintiff, Mr. Hynes "tolerate[ed], fail[ed] to discipline, and encourage[d] violations of his Office's constitutional obligations," which harmed him and others whom the office prosecuted during that period. (*Id.* ¶¶ 141-42.)

Additionally, he alleges that Mr. Hynes trained prosecutors and investigators to avoid disclosing *Brady* information. (*Id.* ¶ 145.) To support these allegations, he attaches to his complaint a list of court decisions "finding that prosecutors had wrongfully failed to disclose information as required under *Brady*, *Rosario*, or state discovery laws, or otherwise had engaged in conduct that misled courts, juries, defendants, and/or defense attorneys." (*Id.* ¶ 149.) According to the plaintiff, "[n]o prosecutor was ever reported to outside disciplinary bodies for such conduct;" rather, "[p]ersonnel found to be involved in such misconduct continued to receive raises, bonuses and promotions." (*Id.* ¶¶ 152-53.) He also cites deposition testimony from a civil case, in which Mr. Hynes' former Chief of Investigations and the former Counsel to the District Attorney "acknowledged that there was no formal disciplinary procedure or policy for prosecutorial or police misconduct committed by District Attorney's Office employees, and that they were unaware of any prosecutor ever being disciplined during Mr. Hynes's tenure for unconstitutional conduct committed during a criminal investigation or prosecution." (*Id.* ¶ 154.)

On November 30, 2016, the defendants moved to dismiss the complaint for failure to state a claim. They argue that the plaintiff's fair trial claims are time-barred, defendant ADA Ginsberg and Sergeant Owens have absolute immunity, the plaintiff has not adequately pleaded

6

municipal liability, and the state law claims should be dismissed because the plaintiff cannot overcome the presumption of probable cause created by his indictment.

## DISCUSSION

I.    Standard of Review

In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

Under limited circumstances, a court may consider certain extraneous documents without converting a motion to dismiss into a motion for summary judgment. Permissible extraneous materials include those that are "integral to the complaint," meaning that the plaintiff relied on them when drafting the complaint. *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006). Generally, documents that fall into this category are "contract[s] or other legal document[s] containing obligations upon which the plaintiff's complaint stands or falls…" *Id.* at 157. Additionally, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998)).

The defendants request that I consider police reports, (Declaration of Philip DePaul, "DePaul Decl.", ECF 23, Ex. B-D) as well as the criminal trial transcript and verdict sheet for the

underlying case against the plaintiff, *People v. Carlos Davis*, Indict. No. 9133/88 (N.Y. Sup. Ct., Kings Cty). (Defs. Mot. Dismiss at 6-7.) Although the plaintiff's complaint quotes portions of the transcript, he explicitly contests the veracity of the trial testimony. Accordingly, I take judicial notice of the plaintiff's criminal trial transcript and verdict sheet, but not for the truth of the matters asserted. The police reports do not fall within either category of permissible extraneous documents. The plaintiff did not rely on them, and there is no indication they were filed in another court.[5] Accordingly, I do not consider the police reports for the purpose of deciding the defendants' motion to dismiss.

II.     Section 1983

"To state a claim for relief in an action brought under § 1983, a plaintiff must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Barroga-Hayes v. Susan D. Settenbrino, P.C.*, 10 Civ. 5298 (RJD), 2012 WL 1118194, at *8–9 (E.D.N.Y. Mar. 30, 2012) (quoting *Am. Mnfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (alterations omitted)). The plaintiff alleges that the defendants violated his right to a fair trial by manufacturing false evidence against him, including Ms. Hayes' testimony, prosecuting the plaintiff when they knew they lacked probable cause, and failing to turn over *Brady* evidence. (Compl. ¶ 120.)

---

[5] The defendants cite *Obilo v. City Univ. of City of N.Y.*, 01 Civ. 5118 (DGT), 2003 WL 1809471 (E.D.N.Y. Apr. 7, 2003) to support their argument that I should consider the police reports, but in that case the plaintiff conceded at oral argument that he incorporated the reports into the complaint by reference. *Id.* at *4.

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights," *Fappiano v. City of N.Y.*, 640 Fed.Appx. 115, 118 (2d Cir.), *cert. denied sub nom. Fappiano v. City of N.Y., N.Y.*, 137 S. Ct. 341 (2016). A detective denies a defendant a fair trial when he generates "false information likely to influence a jury's decision and forwards that information to prosecutors," and when he withholds *Brady* material from a defendant. *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Likewise, a "prosecutor deprives a criminal defendant of liberty without due process of law by fabricating evidence in an investigative role under circumstances where it is reasonably foreseeable that the false evidence will be used to deprive the defendant of liberty." *Zahrey v. Coffey*, 221 F.3d 342, 356–57 (2d Cir. 2000). "A *Brady* violation occurs when a "State suppresses evidence favorable to an accused that is material to guilt or punishment." *Delamota v. City of N.Y.*, No. 14-CV-5888 (NG), 2016 WL 3023267, at *7 (E.D.N.Y. May 24, 2016) (quoting *Cone v. Bell*, 556 U.S. 449, 451 (2009)), *aff'd*, No. 16-2062-CV, 2017 WL 1086878 (2d Cir. Mar. 21, 2017)). Both prosecutors and police officers may be held liable for *Brady* violations. *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015).

A plaintiff may sue a municipality for constitutional violations that occurred pursuant to a "governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or

9

(4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." *Moran v. Cnty. of Suffolk*, No. 11 Civ.3704, 2015 WL 1321685 (E.D.N.Y. Mar. 24, 2015) (citing *Parker v. City of Long Beach,* 563 Fed.Appx. 39 (2d Cir. 2014), *as amended,* (Apr. 21, 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Hines v. Albany Police Dep't,* 520 Fed.Appx. 5, 7 (2d Cir. 2013) (actions of policymakers); *Schnitter v. City of Rochester,* 556 Fed.Appx. 5, 8 (2d Cir. 2014) (failure to train or supervise); *Missel v. Cnty. of Monroe,* 351 Fed.Appx. 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking authority for the municipality)).

The defendants argue that the plaintiff's Section 1983 is time-barred, that the individual defendants are immune from suit, and that the plaintiff has not stated a claim of municipal liability. I address these arguments in turn.

a.   Statute of Limitations

The defendants argue that the plaintiff's fair trial claims accrued at trial, when he became aware of Ms. Hayes' allegedly false testimony, and that those claims are time-barred. (Defs. Mot. Dismiss at 12.) The plaintiff cites *Heck v. Humphrey*, 512 U.S. 477 (1994) for the proposition that his claim did not accrue until his conviction was invalidated. (Pl. Opp. Br. at 2, 4.) In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance

> of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages
> bearing that relationship to a conviction or sentence that has *not*
> been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (footnote omitted) (emphasis in original). Thus, according to the plaintiff, his

claim was not cognizable until he was exonerated. The defendants contend that the plaintiff's

argument is foreclosed by *Wallace v. Kato*, 549 U.S. 384 (2007), in which the Supreme Court

held that Wallace's false arrest claim accrued "when he appeared before the examining

magistrate and was bound over for trial," not when his conviction was overturned. 549 U.S. at

391. As the Second Circuit has explained, "*Heck* only comes into play potentially to delay

accrual of an action when a resolution of that action in a plaintiff's favor could not be reconciled

with an extant criminal conviction." *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015).

Unlike the false arrest claim in *Wallace*, a fair trial claim cannot be reconciled with a

criminal conviction. *See, e.g., Warren v. Fischl*, No. 15-3919, 2017 WL 66584, at *2 (2d Cir.

Jan. 6, 2017) (summary order) (claims that prosecutors and police officers "conspired to

fabricate evidence and testimony against [the plaintiff] and introduced such fabricated evidence

and perjury at trial...would necessarily imply that his conviction was unlawful"); *Johnson v. N.Y.

City Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) ("[A] Brady claim is not cognizable under

§ 1983 unless the challenged conviction has been invalidated."); *Nnodimele v. Derienzo*, No. 13

Civ. 3461 (ARR) (RLM), 2016 WL 3661273, at *3 (E.D.N.Y. July 5, 2016) (holding fair trial

claim based on falsified evidence did not accrue until the underlying conviction was invalidated,

thus it was not time-barred under *Wallace*). Accordingly, the plaintiff's fair trial claim accrued

upon his exoneration, and his complaint was filed within the statute of limitations.

b.  Absolute Immunity

Prosecutors performing duties related to their prosecutorial function are protected by absolute immunity. *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case.") (citations and internal quotation marks omitted); *Warney v. Monroe Cty.*, 587 F.3d 113, 121 (2d Cir. 2009) (prosecutors are protected by absolute immunity if "they were functioning as advocates when they engaged in the challenged conduct") (quoting *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir. 1996)). "By contrast, only qualified immunity attaches '[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer,' such as 'searching for the clues and corroboration that might give ... probable cause.'" *O'Neal v. Morales*, No. 16 Civ. 2901, 2017 WL 549024, at *1 (2d Cir. Feb. 10, 2017) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). Nevertheless, "investigative work may be entitled to absolute immunity when it is 'integral to the overarching advocacy function.'" *Id.* (quoting *Warney v. Monroe County*, 587 F.3d 113, 121, 124 (2d Cir. 2009)). Moreover, "absolute immunity extends not only to prosecutors...but also to individual employees who assist [them] and who act under [their] direction in performing functions closely tied to the judicial process." *Id.* (quoting *Hill v. City of New York*, 45 F.3d at 660) (internal alterations omitted).

To determine whether prosecutorial conduct is entitled to absolute immunity, courts look to the particular function that the prosecutor performed. Thus, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case," but not for "giving legal

advice, holding a press conference, or acting as a complaining witness." *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citations omitted). Additionally, the Second Circuit has held that absolute immunity extends to "evaluating and organizing evidence for presentation at trial or to a grand jury… or determining which offenses are to be charged," *Hill v. City of N.Y.*, 45 F.3d 653, 660–61 (2d Cir. 1995) (internal citations and quotations omitted); *see also Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012) (prosecutor entitled to absolute immunity regarding his interrogation of an arrestee because the purpose was to inform "legal decisions at the core of the prosecutorial function—pursuit of the charges, arraignment, bail, etc.").

The defendants assert that ADA Ginsburg and Sergeant Owens are entitled to absolute immunity, because the plaintiff's challenge is to actions they took during "the judicial phase of the criminal process.'" (Defs. Mot. Dismiss at 8 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).[6] The plaintiff responds that Sergeant Owens is not entitled to absolute immunity because he is not a prosecutor, and that ADA Ginsburg's entitlement to prosecutorial immunity cannot be resolved on a motion to dismiss because there are factual questions about whether the challenged conduct was prosecutorial or investigative in nature. (Pl. Opp. Br. at 10-11.)

### i.  ADA Ginsburg

The plaintiff claims that he challenges ADA Ginsburg's "investigative acts"—his alleged direction to defendants Robert Williams and Sergeant Owens to find Ms. Hayes, and then coaching her before she testified—and not Ginsburg's so-called "presentation of Ms. Hayes'

---

[6] The defendants reserve their arguments about qualified immunity for summary judgment. (Defs. Mot. Dismiss at 7, n. 4.) Accordingly, this order does not address whether any defendants might be entitled to qualify immunity.

perjured testimony, his suppression of *Brady* information, or anything he did as an advocate in the courtroom." (Pl. Opp. Br. at 11-12.)

Both parties cite *Hill v. City of N.Y.*, 45 F.3d 653 (2d Cir. 1995) to support their arguments. In that case, the Second Circuit considered whether the following alleged prosecutorial acts were subject to absolute immunity:

> (1) unjustifiably directing that [the plaintiff's] children be removed from her home; (2) directing the police to arrest [the plaintiff] without probable cause; (3) maliciously prosecuting her; (4) conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury; (5) deliberately suppressing *Brady* material; and (6) fabricating evidence.

45 F.3d at 661. The Court determined that the first two acts were not subject to absolute immunity, acts (3) through (5) were subject to absolute immunity, and that the final charge of fabricating false evidence "present[ed] the closest issue on appeal." *Id*. Hill alleged that the prosecutor told her child how to respond to questioning, videotaped interviews with him, presented a tape of the coerced testimony to the grand jury, and did not disclose that the child provided conflicting testimony on an earlier videotape. *Id*.

The court held that the question of immunity could not be resolved as a matter of law. Immunity does not extend to a prosecutor's falsification of evidence "during the investigatory phase of a criminal case;" accordingly, "if the videotapes were made to collect or corroborate evidence against Hill in order to get probable cause to arrest her, the act of making the tapes" was not subject to absolute immunity. *Id*. at 662. As the plaintiff concedes, "[i]n *Hill*, the fine line between advocacy and investigation hinged on whether the prosecutor's actions were done before or after an indictment was obtained"—which "is not the question here, where the

14

challenged conduct occurred during trial." (Pl. Opp. Br. at 13). In *Hill*, the prosecutor did not order Hill's arrest until after he filmed the second interview; thus, the Court found it possible that the evidence was created "at least in part, to provide probable cause for Hill's arrest." *Hill*, 45 F.3d at 661. The plaintiff contends, nevertheless, that *Hill* supports the argument that interrogation of a witness is an investigative function. If that were enough to defeat absolute immunity, however, it would have been irrelevant whether the challenged actions in *Hill* occurred before or after the indictment.

Indeed, the circumstances here show that ADA Ginsburg's challenged actions were prosecutorial, not investigative. He presented several witnesses in court and when some did not testify in the way he anticipated, he asked the court for permission to look for another witness. Accordingly, ADA Ginsburg's alleged meeting with Ms. Hayes was "pending or in preparation [for] a court proceeding in which the prosecutor acts as an advocate," thus triggering absolute immunity. *Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012) (citing *Warney v. Monroe Cty.*, 587 F.3d 113, 123 (2d Cir. 2009)). "Because the objective circumstances triggered absolute immunity, [the plaintiff's] allegations that the interview was in furtherance of a conspiracy to 'create statements that would falsely implicate [him] of a crime … are irrelevant." *Id.* (citing *Hill*, 45 F.3d at 662); *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include…allegedly conspiring to present false evidence at a criminal trial."); *Collins v. City of N.Y.*, 923 F. Supp. 2d 462, 472 (E.D.N.Y. 2013) ("[A]cts are not shielded by absolute immunity if they involve

15

'gathering and piecing together ... evidence for indications of criminal activities and determination of the perpetrators.'") (quoting *Giraldo*, 694 F.3d at 166).

Accordingly, I grant the defendants' motion to dismiss the fair trial claims against defendant ADA Ginsburg.[7]

### ii. Sergeant Owens

The defendants claim that Sergeant Owens is likewise entitled to absolute immunity because the claims against him are "based solely on his actions at the meeting in which Ms. Hayes was allegedly coached to testify." (Defs. Mot. Dismiss at 11.) In their motion, the defendants also cite *Hill*, in which the Second Circuit held that employees of the District Attorney's office "are entitled to the same degree of immunity as [the prosecutor] himself for their activities while assisting with the investigation and prosecution of the case against [the] plaintiff." 45 F.3d at 660. The plaintiff responds that *Hill* did not extend to police officers. (Pl. Opp. Br. at 10-11.)

After the defendants' motion to dismiss was fully briefed, the Second Circuit decided *O'Neal v. Morales*, No. 16-2901-CV, 2017 WL 549024 (2d Cir. Feb. 10, 2017) (summary order), in which it affirmed a district court's determination that a police officer's "challenged actions undertaken at the behest of the Assistant District Attorney...[were] shielded by prosecutorial immunity." 2017 WL 549024, at *1. In that case, the prosecutor asked the police officer to visit an alleged victim two weeks before trial "to ascertain specific information relevant to anticipated

---

[7] The plaintiff does not state a *Brady* claim against ADA Ginsburg in his fair trial cause of action, (Compl.¶¶ 129-135.) To the extent he intends to assert that claim against ADA Ginsburg, it is also barred by absolute immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).

testimony." *Id.* The court reasoned that although "field fact-gathering is consistent with the investigatory function, the timing of the prosecutor's request and the ultimate use of the information so obtained as trial testimony establish that the investigative activity...was in furtherance of the advocacy function of preparing for judicial proceedings." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *DiBlasio v. Novello*, 344 F.3d 292, 300–01 (2d Cir. 2003)). Since a prosecutor's role includes "obtaining" evidence for trial, and the officer was obtaining evidence for trial at the prosecutor's direction, the court found that the principle announced in *Hill* applies to police officers. *Id.* at *2 (internal citations omitted).

The circumstances here are similar. The plaintiff claims that in the middle of trial, ADA Ginsburg directed Sergeant Owens, Robert Williams, and other Doe defendants "to locate a witness to testify" against the plaintiff. (Compl. ¶ 82.) When Williams found Ms. Hayes, according to the plaintiff, Ginsburg and Owens both met with her and "fed her a false narrative" and "coached" her testimony. (*Id.* ¶¶ 84-85.) Accordingly, based on the reasoning articulated in *O'Neal*, I find that Sergeant Owens is entitled to absolute immunity.

### c. Municipal Liability

A plaintiff may allege municipal liability for constitutional violations that occurred pursuant to a "governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "Where a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally...the city may be held liable for its employees' unconstitutional acts." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). To plead municipal liability based on the actions of a "subordinate municipal

17

official," the plaintiff must show that the challenged conduct is attributable "to the actions or omissions of higher ranking officials with policymaking authority." *Id.* at 126–27. One method of doing so is to show that the policy maker was deliberately indifferent to the "subordinate's unconstitutional actions...effectively ratifying" them. *Id.* (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992)).

A claim of deliberate indifference may be framed as a claim regarding the municipal defendant's failure to train its employees. To assert municipal liability based on a failure to train, "the plaintiff must show [1] that a policymaker knows 'to a moral certainty' that her employees will confront a given situation...[2] that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation" and "[3] that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal citations omitted).

The plaintiff asserts a claim of municipal liability based on an alleged widespread practice of constitutional violations by employees of the DA's Office under the direction of former District Attorney Charles Hynes. (Compl. ¶¶ 136-38.) He claims that the DA's Office was deliberately indifferent to its employees' fabrication of evidence, coercion of witnesses, subornation of perjury and suppression of *Brady* information, and that the Office's "training and discipline policies and practices" were "consciously designed to permit and encourage *Brady* violations." (*Id.* ¶ 144; *see also id.* ¶¶ 145-65.) To support his claim, he cites several court cases as well as deposition testimony about the office's policies. He also cites other cases in this Circuit in which courts held that similar allegations were sufficient to state a claim of municipal

18

liability. *See, e.g., Walker v. City of N.Y.*, 974 F.2d 293, 300 (2d Cir. 1992) (concluding "that a complete failure by the DA in 1971 to train ADAs on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to give rise to § 1983 municipal liability"); *Collins v. City of N.Y.*, 923 F. Supp. 2d 462, 478 (E.D.N.Y. 2013) (concluding that the plaintiff's "allegations regarding Hynes's response—or lack thereof—to misconduct by [ADAs] ma[d]e plausible his theory that Hynes was so deliberately indifferent to the underhanded tactics that his subordinates employed as to effectively encourage them to do so").[8]

The defendants argue that the plaintiff has not adequately alleged a widespread practice sufficient to state a claim of municipal liability. They assert that only eight of the cases the plaintiff cites were decided before the plaintiff's conviction in February of 1991, and that the rest of the cases are irrelevant since they do not show a policy that caused or enabled his alleged constitutional violations. (Defs. Mot. Dismiss at 24.) Additionally, they argue that several of the cited cases used "equivocal" language, and did not necessarily find that there were discovery

---

[8] Under New York law, the City cannot be liable for the King's County District Attorney's Office's decisions regarding prosecution, but it can be held liable for managerial or administrative decisions. *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1153 n.14 (2d Cir. 1995). This is because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State" and not the municipality. *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988). The Supreme Court has held, in the context of analyzing prosecutorial immunity, that trial training and supervision are not administrative. *Van de Kamp v. Goldstein*, 555 U.S. 335, 345-48 (2009). Thus, generally, a DA's office's failure to train its ADAs on the proper disclosure of exculpatory evidence cannot serve as the basis of a municipal liability claim. *Bellamy v. City of N.Y.*, No. 12 Civ. 1025 (AMD)(PK), 2017 WL 2189528, at *38–39 (E.D.N.Y. May 17, 2017); *Jones v. City of N.Y.*, 988 F. Supp. 2d 305, 314 (E.D.N.Y. 2013). Nevertheless, a "long and persistent history of feckless training and discipline practices regarding personnel might give rise to municipal liability." *Jones*, 988 F. Supp. 2d at 317 (citing, *inter alia, Gentile v. County of Suffolk*, 926 F.2d 142, 153 n. 5 (2d Cir. 1991); *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978); *Evergreen Review, Inc. v. Cahn*, 230 F.Supp. 498 (E.D.N.Y. 1964)). Here, the plaintiff alleges that the DA's office was deliberately indifferent to a wide array of improper tactics, not just Brady violations, and that the DA's office engaged in a "long and persistent history" of violations. *Id.* Accordingly, the question whether the plaintiff's allegations encompass the DA's administrative duties requires the resolution of factual questions and is best reserved for summary judgment or trial.

violations. (*Id.* at 25.) The plaintiff responds that he is prepared to amend his complaint to add more cases if necessary.

Contrary to the defendants' assertion, cases that occur after a section 1983 plaintiff's conviction may be considered for the purpose of assessing whether he has stated a claim of municipal liability. The defendants rely on *Connick v. Thompson*, 563 U.S. 51, 62 n.7, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011), in which the Supreme Court dismissed evidence of contemporaneous or subsequent conduct in a "failure to train" case because it could not "provide notice to the cit[y] and the opportunity to conform to constitutional dictate." *Id.* (quoting *Canton v. Harris,* 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (alterations in original)). Subsequent conduct is irrelevant in a failure to train context because "the key determination is whether the municipal actors were 'on actual or constructive notice that a particular omission in their training program' causes constitutional deprivations." *Chepilko v. City of N.Y.*, No. 06 Civ. 5491 ARR LB, 2012 WL 398700, at *15 n. 11 (E.D.N.Y. Feb. 6, 2012) (quoting *Connick*, 131 S. at 1359-60). "Where the relevant inquiry is notice, subsequent or contemporaneous conduct would therefore not have probative value." *Id.* On the other hand, "[w]here… the plaintiff alleges an actual, albeit informal, policy, subsequent conduct can be circumstantial evidence of the existence of a preceding municipal policy or custom." *Id.* (citing *Dejesus v. Village of Pelham Manor,* 282 F.Supp.2d 162, 175–76 (S.D.N.Y. 2002)).

In this case, while one of the plaintiff's theories of municipal liability is based on a failure to train, the plaintiff also alleges that the DA's Office had a policy of actively "encourag[ing]" constitutional violations. (Compl. ¶¶ 140-46.) Accordingly, with respect to the latter theory, conduct that occurred after the plaintiff's conviction may be "circumstantial

20

evidence of the existence of a preceding municipal policy or custom." *Chepilko*, 2012 WL 398700, at *15.

As the defendants note, the plaintiff's list include some cases in which courts found that the late disclosure of *Brady* material was not prejudicial and thus, reversal was not required. *See, e.g.*, *People v. Murphy*, 109 A.D.2d 895, 896, 487 N.Y.S.2d 89 (1985) ("Although the People should have turned over the statement at the time of the original request, we agree with the trial court that no evidence in the withheld statement was "so material or relevant to defendant's case that he was deprived of a fair trial") (internal alterations omitted); *People v. Gairy*, 116 A.D.2d 733, 734, 497 N.Y.S.2d 775 (1986) (late disclosure of *Brady* material was harmless error). Nevertheless, these cases are relevant to whether the DA's office engaged in a pattern of withholding exculpatory information.  The plaintiff also cites several cases in which courts granted relief based on the determination that the DA's Office committed *Brady* violations. *See, e.g.*, *People v. Crespo*, 188 A.D.2d 483, 484, 591 N.Y.S.2d 57 (1992) (trial court granted a mistrial based on *Brady* violation); *People v. Brown*, 187 A.D.2d 437, 438, 590 N.Y.S.2d 732 (1992) (trial court sanctioned prosecutor for *Brady* violation); *People v. Roberts*, 203 A.D.2d 600, 602, 611 N.Y.S.2d 214 (1994) (granting a new trial due to *Brady* violation).[9]

I find that the plaintiff's allegations of municipal liability, taken together, are sufficient to withstand the defendant's motion to dismiss. It is undisputed that the plaintiff's conviction was vacated at the request of the DA's Office, pursuant to an investigation by that office's Conviction

---

[9] The defendants note that the plaintiff's list of cases include some that are dissimilar from his own, because they involve state discovery laws that do not implicate federal constitutional rights. Even if I exclude these cases, I find that the plaintiff has stated a *Monell* claim.

Review Unit. The plaintiff has alleged that the prosecutor in his case committed several violations that led to his own wrongful imprisonment. He has also pointed to similar violations in other cases, and determinations by other courts that similar allegations against the same office gave rise to a claim of municipal liability. Accordingly, I deny the defendants' motion to dismiss the plaintiff's *Monell* claim.

### III.   State Law Claims

#### a.   Malicious Prosecution

"Under New York law, there are four elements of the tort of malicious prosecution: (1) the commencement or continuation of a criminal proceeding against the plaintiff; (2) favorable termination of the criminal proceeding to plaintiff; (3) want of probable cause for the proceeding; and (4) actual malice." *Cox v. Cty. of Suffolk*, 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (1983); *Broughton v. State of New York*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, 317 (1975), *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)). An indictment creates a presumption of probable cause, which the plaintiff may rebut with "proof that the defendant misrepresented, withheld, or falsified evidence." *Id.* (citations omitted).

The defendants argue that the plaintiff cannot overcome the presumption of probable cause created by his indictment, because the City defendants did not procure his indictment; Sergeant Owens was not involved in obtaining the indictment, and ADA Ginsburg became involved in the prosecution after the indictment. (Defs. Mot. Dismiss at 27-28.) Thus, the defendants claim, the plaintiff's allegations of misconduct do not tarnish the validity of the indictment.

22

Under state law, however, a plaintiff may assert a malicious prosecution claim based on the commencement or the continuation of a prosecution without probable cause. Accordingly, the plaintiff's allegations, if true, would support a determination that the City defendants continued the prosecution even after they no longer had probable cause. *See Putnam v. Cty. of Steuben*, 61 A.D.3d 1369, 1371, 876 N.Y.S.2d 819 (N.Y. App. Div. 4th Dept. 2009) ("The jury could thus rationally find that defendant's employees showed a reckless disregard for plaintiff's rights both by initiating the criminal prosecution and by allowing it to continue when they either knew or should have known that there was no probable cause for that prosecution."). Moreover, "where a grand jury indictment is reviewed by a state judge and dismissed due to total lack of evidence in support of one of the elements of the crime charged, the presumption of probable cause raised by that indictment will fall." *Cox v. Cty. of Suffolk*, 827 F. Supp. 935, 939 (E.D.N.Y. 1993). Thus, the plaintiff claims the presumption of probable cause is sufficiently rebutted by the fact that the Brooklyn Supreme Court granted the DA's Office's motion to vacate his conviction, "and dismissed the indictment against him." (Compl. ¶¶ 4-5; Pl. Opp. Br. at 15.) Although it is not clear from the face of the complaint whether the indictment was dismissed "due to a total lack of evidence in support of one of the elements of the crime charged," the plaintiff has alleged sufficient facts to withstand a motion to dismiss.

     b.  Intentional Infliction of Emotional Distress (IIED)

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the

conduct and the injury; and (4) severe emotional distress." *Moore v. City of N.Y.*, 219 F. Supp. 2d

335, 338–39 (E.D.N.Y. 2002) (quoting *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999)).

The defendants argue that the plaintiff's claim for IIED should be dismissed because it is

duplicative of his malicious prosecution claim. (Defs. Mot. Dismiss at 28.) Indeed, "[t]he New

York Court of Appeals has strongly cautioned against allowing emotional distress claims to be

brought where other tort remedies are available." *Moore*, 219 F. Supp. 2d at 339 (citing *Fischer*

*v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978)). "Accordingly, '[n]o

intentional infliction of emotional distress claim will lie where the conduct underlying the claim

falls within the ambit of traditional tort liability.'" *Id.* (quoting *Naccarato v. Scarselli,* 124

F.Supp.2d 36 (N.D.N.Y. 2000)); *see also Bender v. City of N.Y.*, 78 F.3d 787 (2d Cir. 1996)

(declining to decide whether a plaintiff may raise both a malicious prosecution and IIED claim,

but holding that the jury's damages award was likely the result of duplication of claims).[10] The

defendants' motion to dismiss the plaintiff's IIED claims is granted.

c.   Negligent Training, Supervision and Discipline

To state a claim for negligent supervision "under New York law, in addition to the

standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant

were in an employee-employer relationship; (2) that the employer "knew or should have known

---

[10] The plaintiff cites one New York case, in which a plaintiff asserted both an IIED claim and a malicious prosecution claim. *Levine v. Gurney*, 149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (1989). As the Second Circuit has explained, however, that case involved factual circumstances that render it "a doubtful authority for inferring any generalized rule." *Bender v. City of N.Y.*, 78 F.3d 787, 792 (2d Cir. 1996).

of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations omitted).

The defendants move to dismiss the plaintiff's negligent supervision claim on the same ground they asserted in *Collins v. City of N.Y.*, 923 F. Supp. 2d 462, 480 (E.D.N.Y. 2013). As they did in *Collins*, "[t]he City cites *Newton v. City of New York,* 681 F.Supp.2d 473 (S.D.N.Y. 2010), for the proposition that 'a claim for negligent hiring or supervision can only proceed against an employee acting outside the scope of her employment.'" *Id.* (quoting *Newton*, 681 F. Supp. at 488). "The rationale for th[at] rule is that a cause of action for negligent hiring is superfluous because an employer will be vicariously liable for employees acting within the scope of their employment." *Id.*

In *Newton*, Judge Scheindlin considered the evidence produced in the parties' summary judgment submissions and concluded that the plaintiff could not establish that the defendant employees acted outside the scope of their employment. 681 F. Supp. at 488. Here, by contrast, factual issues preclude such a determination. Contrary to the defendants' assertion, it is not enough that the plaintiff claims the defendants were acting under color of state law for purposes of his Section 1983 claims, since a reasonable juror may conclude that a defendant was acting both "under color of state law" and outside the scope of his employment. *See Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 623-25 (E.D.N.Y. 2012). Accordingly, I deny the defendants' motion to dismiss the plaintiff's negligent hiring claim as a matter of law.

## CONCLUSION

For the reasons stated above, I grant the defendants' motion to dismiss the fair trial claims against defendants Sergeant Owens and ADA Ginsburg. Additionally, I grant their motion to dismiss the claim for intentional infliction of emotional distress. I deny their motion in all other respects.

SO ORDERED.

Dated: Brooklyn, New York
        May 25, 2017

                                        s/Ann M. Donnelly
                                _____
                                ANN M. DONNELLY
                                United States District Judge

26